# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WAYNE R. ANDERSEN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 6353 | DATE | MAY 30, 2003 |
| CASE TITLE | Edward Bontkowski v. Brian Smith, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The United States of America is substituted for Brian Smith as party defendant, terminating defendant Brian Smith. The motion to dismiss of the United States of America [54-1] is construed as a motion for summary judgment and is granted. All claims against the United States are dismissed with prejudice, terminating party United States of America. Plaintiff's renewed motion to commence discovery [65-1] is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 0 3 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 71 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUN 0 3 2003

EDWARD BONTKOWSKI,  )
               )
  Plaintiff,  )
               )
  v.          )   No. 98 C 6353
               )
THE UNITED STATES OF AMERICA,  )   Judge Wayne R. Andersen
ELENA BONTKOWSKI, a/k/a Elena Bront,  )
and Unknown John and Jane Doe Agents  )
of the United States,  )
               )
  Defendants.  )

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the motion of the United States of America to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the following reasons, the motion is treated as a motion for summary judgment and granted.

### BACKGROUND

Plaintiff Edward Bontkowski, a federal prisoner incarcerated in Florida, filed this suit on October 9, 1998, against Elena Bontkowski, his ex-wife, also known as Elena Bront, and FBI agent Brian Smith. Bontkowski alleged that Smith and Bront conspired to have Bontkowski prosecuted on false charges and to deprive Bontkowski of certain valuable works of art.

After the case was initially dismissed for want of prosecution and reinstated, Smith moved to dismiss the suit. On October 31, 2000, the court granted the motion because Bontkowski had sought declaratory and injunctive relief without alleging facts that would justify either. The court also believed its jurisdiction depended on a federal constitutional claim that was barred by the applicable two-year limitations period. Bontkowski's motion to reconsider was denied.

On September 26, 2002, the Court of Appeals reversed and remanded, stating that this court had "buried [this suit] prematurely because a few faint signs of life remained." *Bontkowski v.*

*Smith*, 305 F.3d 757, 759 (7th Cir. 2002). The Court of Appeals agreed that Bontkowski had not shown a basis for declaratory or injunctive relief, *id.*, at 760-61, but held that this court erred in failing to consider whether Bontkowski might be entitled to other relief, such as a constructive trust. *Id.* at 761-62. The court held that its intervening decision in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), barred any constitutional claim for malicious prosecution, *id.*, at 760, but that Bontkowski had stated a claim for conversion under Illinois law and had adequately invoked federal diversity jurisdiction under 28 U.S.C. § 1332. *Id.* at 763.

## SUBSTITUTION OF THE UNITED STATES AS PARTY DEFENDANT

After this case was remanded, the United States filed a "Notice of Substitution" to substitute the United States for Smith as party defendant under the Westfall Act, 28 U.S.C. § 2679(d)(1), together with a certification by the Attorney General that Smith had been acting within the scope of his employment by the United States at the time of the incidents giving rise to the complaint. Simultaneously, the United States moved to dismiss Bontkowski's claims for lack of subject-matter jurisdiction. The United States contends that Bontkowski's sole remedy is a claim against the United States under the Federal Tort Claims Act (FTCA), and Bontkowski has not exhausted administrative remedies prior to filing suit, a jurisdictional requirement of the FTCA.

The motion can be granted only if the United States is properly substituted for Smith. It would appear from the statutory language that the Attorney General's certification is conclusive: "[u]pon certification by the Attorney General . . . that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). Nevertheless, the Supreme Court has held that the scope-of-employment certification by the Attorney General may be challenged by the plaintiff and is subject to review by the district court. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995).

2

Because certification does not necessarily result in substitution, the United States' "Notice of Substitution" is effectively a motion to substitute. A motion to substitute may resemble either a motion to dismiss or a motion for summary judgment, in that it may either accept the allegations of the complaint as true for purposes of the motion, or it may attempt to show, through evidence outside the pleadings, that there is no genuine dispute that the plaintiff was acting within the scope of his employment. *Taboas v. Mlynczak*, 149 F.3d 576, 580-81 (7th Cir. 1998). Nevertheless, a motion to substitute differs in one critical respect from either a motion to dismiss or a motion for summary judgment: the plaintiff opposing substitution, rather than the movant, bears the burden of persuasion. *Id.* at 582; *Snodgrass v. Jones*, 957 F.2d 482, 487 n.3 (7th Cir. 1992).

Bontkowski contends that Smith's alleged acts fell outside the scope of his employment as a matter of Illinois law. Bontkowski is correct that the scope of Smith's employment is determined by state law. *Taboas*, 149 F.3d at 582. Under Illinois law, an employee's action falls within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master." *Id.* (*quoting Pyne v. Witmer*, 129 Ill.2d 351, 543 N.E.2d 1304, 1308 (1989)).

In his opposition to the motion, Bontkowski asserts that two allegedly tortious actions by Smith lay outside the scope of his employment: Smith's instructing Bront to make false statements to the Arlington Heights police, resulting in Bontkowski's prosecution, and Smith's intervention with both the Arlington Heights and Chicago police departments, causing them to cease their investigation of Bontkowski's theft complaints against Bront.

Although Bontkowski recites the foregoing three factors defining the scope of employment under Illinois law, he does not explain which of them has not been met. Bontkowski does not contest that Smith's actions occurred substantially within authorized time and space limitations. As the Court of Appeals noted, "Smith was in charge of an investigation that resulted in criminal charges of fraud that have led to Bontkowski's being imprisoned." *Bontkowski*, 305 F.3d at 760.

3

Smith's contacting Bront (the former Mrs. Bontkowski), developing a relationship with her, and obtaining information for use against Bontkowski was within the scope of that investigation.

Apparently addressing the first factor, the kind of actions Smith was employed to perform, Bontkowski points out that giving a false report of a crime, as Smith allegedly induced Bront to do, is itself a crime under Illinois law and violates public policy. The test, however, is not whether the employee has been authorized to perform the alleged actions, it is whether they are of the *kind* he was employed to perform. "[A]ctions having an intimate bearing on the duties normally assigned to the office of employment, even though usurped or misused, must be considered as falling within the meaning of the term 'scope of employment.'" *Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987).

Smith was an FBI agent. As a law enforcement officer, he was employed to investigate suspected crimes and procure the arrest and prosecution of suspected criminals. Although Smith was employed to investigate federal crimes, his employment included exchanging information and cooperating with officers of other law enforcement agencies. Bontkowski has not chosen to reveal what offenses Bront falsely accused him of committing, but if Bront's allegations against Bontkowski had been true, Smith's referring her to the Arlington Heights police would indubitably have been within the scope of his employment. This was precisely the *kind* of act Smith was authorized to perform, and it remains the same *kind* of act even if Smith knew the allegations were false. "[T]hose acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objective of the employment." *Id.* (quoting *Hibma v. Odegaard*, 769 F.2d 1147, 1152 (7th Cir. 1985).

Bontkowski does not say how Smith caused the Arlington Heights and Chicago police departments to break off their investigation of his theft complaints. Since neither organization is under the control of the FBI, it can only be inferred that Smith told them either that he had reason to believe Bontkowski's complaints were bogus, or that their persisting in their investigations

4

would interfere with FBI activities. Either way, Smith might have been acting improperly, but would have been engaging in the kind of activity he was employed to do.

*Coleman* has been recently criticized as a statement of Illinois law because its statements that the employee's subjective intent is not the "determining factor" and that the scope of employment "must be measured by objective criteria," *Coleman*, 814 F.2d at 849, emphasize the first factor, the nature of the alleged acts, at the expense of the third factor, that the employee be motivated, at least in part, by an intent to serve the employer. *See Lyons v. Adams*, ___ F.Supp.2d ___, 2003 WL 1956277 (N.D. Ill. 2003)(St. Eve, J.); *Dorsey v. Givens*, 209 F.Supp.2d 850, 853 (N.D. Ill. 2001)(Moran, J.). These opinions note that subsequent Illinois decisions have reaffirmed the importance of the defendant's subjective purpose, holding that a defendants' actions "performed purely in his own interest" are not within the scope of his employment. *Wright v. City of Danville*, 174 Ill.2d 391, 405, 675 N.E.2d 110, 118 (1996).

The Seventh Circuit in *Taboas* cited both *Coleman* and *Wright* without noting a conflict. *Taboas*, 149 F.3d at 583. We read *Coleman* as elaborating on the first factor, whether the acts are of the kind the employee has been authorized to perform. This is indeed an objective determination, and in many cases it will be dispositive. A good example is *Snodgrass*, where the defendant FBI agent asserted that he was acting within the scope of his employment when he visited a bar after work and talked with other law-enforcement officers. His actions were dispositive: "[e]ven accepting everything Jones says about his motives in going to the bar, this argument is untenable--it is not anyone's job to hang out in a bar for four to five hours, even if he is hanging out with other law enforcement officials." *Snodgrass*, 957 F.2d at 385.

In any event, the third factor is not at issue here. Neither in the complaint nor in his response to the United States' motion has Bontkowski alleged that Smith's motive was completely unrelated to his employment, that he was on a "frolic of his own," in the quaint language of tort law. Bontkowski does not allege that Smith received anything from Bront other than her assistance in investigating and prosecuting him. A law enforcement officer who performs illegal favors to

obtain a witness's cooperation, or even to buy her perjured testimony, is acting within the scope of his employment. *See Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997)(torturing suspects to obtain confessions was within scope of police officer's employment). Bontkowski has not rebutted the Attorney General's certification that Smith was acting within the scope of his employment, and the United States is substituted for Smith.

## THE UNITED STATES' MOTION TO DISMISS

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), permits individual federal employees acting with federal authority to be sued individually if they are responsible for deprivations of constitutional rights. Bontkowski's surviving claims, however, are based on Illinois law, not the Constitution. A federal employee acting within the scope of his employment is not subject to suit for state-law tort claims, and the injured party's sole remedy is a suit against the United States under the FTCA. 28 U.S.C. § 2679(b)(1); *United States v. Smith*, 499 U.S 160, 163 (1991).

The FTCA requires a plaintiff to have presented his claim to the appropriate federal agency before filing suit. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993). Although this administrative exhaustion requirement is sometimes called "jurisdictional," the Supreme Court in *McNeil* did not designate it as such, and the Seventh Circuit understands it as a prerequisite to suit rather than a limit on the court's subject-matter jurisdiction. *Kanar v. United States*, 118 F.3d 527, 529-30 (7th Cir. 1997).

The United States asserts, and Bontkowski does not deny, that he never filed an administrative claim with respect to the actions alleged in his complaint, and consequently the United States' motion must be granted. Nevertheless, although the reason for granting the motion is obvious, its proper categorization under the Federal Rules is not.

Because no answer to the complaint has been filed, Rule 12(b) limits the defenses that can be raised by motion to dismiss. The United States has moved to dismiss for lack of subject-matter

6

jurisdiction under Rule 12(b)(1). While FTCA claims are frequently dismissed under Rule 12(b)(1) when the plaintiff has submitted no administrative claim or an inadequate one, *Kanar* indicates that dismissal for lack of subject-matter jurisdiction is inappropriate. According to *Kanar*, § 2675 is only a limitation on the United States' waiver of sovereign immunity; subject-matter jurisdiction is conferred by 28 U.S.C. § 1346(b)(1). *Kanar*, 118 F.3d at 529-530; *see also Clark v. United States*, 326 F.3d 911, 913 (7th Cir. 2003). The Seventh Circuit acknowledged in *Kanar* that § 2675 can be called "jurisdictional" "in the loosest sense," as "a condition precedent to the plaintiff's ability to prevail." *Kanar*, 118 F.3d at 530. Nevertheless, we are unwilling to assume that Rule 12(b)(1) is speaking loosely in referring to "lack of jurisdiction over the subject matter of the action."

The only other Rule 12(b) defense that might apply is Rule 12(b)(6), failure to state a claim upon which relief may be granted. Dismissal on that basis is also problematic. After substituting the United States for Smith, Bontkowski's complaint may well "state a claim upon which relief may be granted." The complaint alleges tortious activity by a federal employee within the scope of his employment, and the Federal Rules do not normally require a plaintiff, particularly a *pro se* plaintiff, to plead fulfillment of conditions precedent to suit. *But cf. Massey v. Helman*, 221 F.3d 1030, 1034 (7th Cir. 2000)(upholding dismissal of prisoner's suit under Rule 12(b)(6) for failure to plead exhaustion of administrative remedies as required by 42 U.S.C. § 1997e(a)).

In raising Bontkowski's failure to file an administrative claim, the United States has introduced a fact not alleged in the complaint. This is permissible in the context of a motion under Rule 12(b)(1); the court may consider evidence outside the pleadings in order to determine whether it has subject-matter jurisdiction. *National Transportation Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). In ruling on a Rule 12(b)(6) motion, on the other hand, if "matters outside the pleading are presented to and not excluded by the court," the motion is to be treated as one for summary judgment under Rule 56 and the plaintiff given an opportunity to present any pertinent material. Fed.R.Civ.P. 12(b).

7

Nevertheless, the court may treat a motion to dismiss as a motion for summary judgment without notice to the plaintiff if the facts alleged in the complaint are taken as true, the additional facts outside the complaint are undisputed, and, taken together, they show that the defendant is entitled to judgment as a matter of law. *See Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir. 1999). As it is undisputed that Bontkowski did not file an administrative claim, summary judgment shall be entered in favor of the United States, dismissing Bontkowski's claims.

Dismissal shall be with prejudice because Bontkowski cannot now file an administrative claim. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). A tort claim against the United States must be presented in writing to the appropriate federal agency within two years after it accrues, 28 U.S.C. § 2401(b), and a claim accrues under the FTCA when the prospective plaintiff knows of his injury and its cause. *See Massey v. United States*, 312 F.3d 272, 276 (7th Cir. 2002). As Bontkowski's claims asserted in this action accrued at the latest in January of 1999, *see Bontkowski*, 305 F.3d at 762, an administrative claim cannot revive them.

**IT IS SO ORDERED.**

Wayne R. Andersen, Judge
United States District Court

DATED: May 30, 2003